1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7   MARIA VANELLA, | Case No. 3:19-cv-07956-WHO |
| 8            Plaintiff, | |
| 9       v. | **ORDER GRANTING MOTION TO DISMISS** |
| 10   FORD MOTOR COMPANY, | Re: Dkt. No. 9 |
| 11            Defendant. | |

12

13       Plaintiff Maria Vanella, who alleges that her 2013 Ford Escape manifested over 50 defects

14 in the five years before she initiated this action, brings claims under state and federal consumer

15 warranty laws along with a claim for fraud. Defendant Ford Motor Company moves to dismiss,

16 arguing that the claims are barred by the statute of limitations and that they are inadequately

17 pleaded. I agree that the claims are too late. I will grant the motion but allow Vanella the

18 opportunity to amend to support her theories of tolling and to cure insufficiencies in her claims.

19                                **BACKGROUND**

20       On August 21, 2014, Vanella purchased a 2013 Ford Escape, a vehicle manufactured and

21 distributed by Ford. Complaint ("Compl.") [Dkt. No. 1] ¶ 9. The vehicle was covered by an

22 express warranty, including a three-year/36,000-mile express bumper to bumper warranty, a five-

23 year/60,000-mile powertrain warranty, and an extended eight-year/75,000-mile powertrain

24 warranty. *Id.* ¶ 8. The powertrain warranty covered engine and transmission repairs. *Id.*

25       In the time after Vanella purchased the vehicle, Ford issued two technical service bulletins.

26 *Id.* ¶¶ 55-56. The first described overheating of the transmission and engine, and the second,

27 which applied to certain 2013 and 2014 Ford Escapes, described engine-related issues affecting

28 driving. *Id.* ¶¶ 55-56. On March 27, 2017, the National Highway Traffic Safety Administration

issued a report stating that 2015 Ford Escape vehicles suffered from an engine cooling system

defect that increased the risk of fire. *Id.* ¶ 57. On January 19, 2018, Ford issued Recall 17S09,

which addressed engine overheating that could cause a fire in the engine compartment. *Id.* ¶ 58.

Vanella alleges that during the warranty period, her vehicle developed dozens of defects,

"including but not limited to":

> defects related to the engine; defects causing repeated illumination of check engine light ("CEL"); defects related to the water pump; defects causing overheating; defects requiring performance test of electronic engine control ("EEC") P1299 and/or P2257; defects related to the evaporative system; defects requiring performance of diagnostic trouble code ("DTC") P1450; defects related to the powertrain control module ("PCM"); defects related to the spark plugs; defects requiring replacement of the spark plugs and/or ignition coil; defects requiring the performance of electronic engine test code P0420; defects requiring replacement of the catalytic converter; defects causing the water pump to leak fluid; defects requiring the replacement of the water pump; defects related to the coolant level sensor to become erratic; defects related to the air conditioner; defects causing the Vehicle to become extremely hot; defects causing the water pump to leak coolant; defects requiring replacement of the restraints control module; defects related to the sensor assembly; defects related to the air bag; defects requiring performance of safety recall 14S21; defects related to sensor #2; defects requiring performance test of electronic engine control ("EEC") P0135; defects causing a bad EGO Sensor; defects causing replacement of the EGO Sensor; defects related to the water heater hose; defects causing the replacement of the leaking heater hoses; defects requiring performance of safety recall 16S30; defects requiring replacement of the side door latch; defects related to the right front axle shaft; defects related to the inner boot; defects requiring replacement of the right front axle shaft; defects causing the illumination of the coolant light; defects requiring the replacement of the leaking coolant bottle; defects causing the replacement of two hoses; defects related to the turbo boost pressure; defects requiring the replacement of the turbo wastegate regulating valve; defects requiring electronic engine control test P0324; defects related to the transmission; defects causing the transmission not to accelerate; defects causing a whining noise from the transmission; defects having internal transmission failure; defects requiring performance of flush cooler lines with heated flusher; defects requiring performance of electronic engine control tests P0731 and/or P0733; defects causing the transmission to stop; defects causing oil leaks; defects related to the left axel seal; defects requiring replacement of the transmission; defects related to the cooler and heater; defects causing a clicking noise from the front outer constant velocity ("C.V."); defects requiring replacement of both axels; defects related to the transmission wire connector; defects causing the transmission wire connectors to break; defects related to the front pan; defects causing the removal of the front pan; defects related to a broken lead frame connector; defects related to the brakes; defects causing brake noise: defects requiring replacement of the front and rear brake pads; defects

2

1    requiring replacement of the wiper blades; and/or any other defects
     described in the Vehicle's repair history.

2    *Id.* ¶ 11.  Vanella alleges that she brought the vehicle to Ford representative(s) in California for

3    repairs, but the representative(s) failed to repair the vehicle.  *Id.* ¶ 28.

4         On December 4, 2019, Vanella filed a Complaint alleging seven causes of action:  for

5    violation of California Civil Code Sections 1793.2(d)(2), 1793.2(b), 1793.2(a)(3), breach of

6    express written warranty under both Song-Beverly and Magnuson-Moss, breach of the implied

7    warranty of merchantability, and fraud by omission.[1]  Ford moved to dismiss on December 23,

8    2019.  Motion to Dismiss ("Mot.") [Dkt. No. 9].[2]

9                                      **LEGAL STANDARD**

10        To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to

11   state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

12   (2007).  A claim is plausible when the plaintiff pleads facts that "allow[ ] the court to draw the

13   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

14   556 U.S. 662, 678 (2009) (citation omitted).  While courts do not require "heightened fact

15   pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the

16   speculative level."  *Twombly*, 550 U.S. at 555, 570.  There must be "more than a sheer possibility

17   that a defendant has acted unlawfully."  *Id.*  To decide if the plaintiff has stated a claim upon

18   which relief can be granted, the court accepts the plaintiff's allegations as true and draws all

19   reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556,

20   561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are

21   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

22   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

23        Claims sounding in fraud or mistake are subject to the heightened pleading standard of

24

25   _____

     [1] The Complaint lists two causes of action as the fifth cause of action and omits a sixth cause of
26   action.

27   [2] I issued an Order to Show Cause after counsel for Vanella failed to appear at the February 7,
     2020 hearing on the motion to dismiss.  Dkt. Nos. 19, 20.  The response shows that counsel made
28   a good faith scheduling error and is committed to taking more care in the future.  *See* Dkt. No. 21.
     I will not impose sanctions.

3

1    Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the

2    circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This includes "the who, what,

3    when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

4    1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). In fraud cases,

5    plaintiffs "must set forth what is false or misleading about a statement, and why it is false." *Id.*

6    The allegations of fraud "must be specific enough to give defendants notice of the particular

7    misconduct which is alleged to constitute the fraud charged so that they can defend against the

8    charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d

9    756, 764 (9th Cir. 2007).

10        If the court dismisses a complaint, it "should grant leave to amend even if no request to

11    amend the pleading was made, unless it determines that the pleading could not possibly be cured

12    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making

13    this determination, the court should consider factors such as "the presence or absence of undue

14    delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

15    undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v.*

16    *Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

17                                    **DISCUSSION**

18    **I.    STATUTE OF LIMITATIONS**

19        Ford argues that the statute of limitations bars every cause of action. Vanella does not

20    meaningfully counter Ford's assertion that the statute has run for each of her claims; instead, she

21    relies on theories of tolling and similar doctrines to argue that she is not barred from pursuing her

22    claims.

23        **A.    The Statutes Have Run**

24        Vanella's first through sixth causes of action are subject to a four-year statute of

25    limitations. "The statute of limitations for all claims under the [Song-Beverly] Act is four years."[3]

26

27    ―――――――――――
      [3] Ford incorrectly asserts that California Code of Civil Procedure section 338's three-year statute
      of limitations applies. *See* Mot. 1, 6-8; *Krieger*, 234 Cal. App. 3d at 215 (applying section 2725,
28    rather than the more general section 338); *Yeager v. Ford Motor Company*, No. 19-cv-06750-
      WHA, 2020 WL 95645, at *2 (N.D. Cal. Jan. 8, 2020) (noting that section 2725 applies for all

                                        4

1    *Ferris v. Ford Motor Co.*, No. 18-CV-03216-JSW, 2019 WL 1100376, at *2 (N.D. Cal. Mar. 8,

2    2019) (applying California Commercial Code section 2725); *see also Covarrubias v. Ford*, No.

3    19-cv-01832-EMC, 2019 WL 2866046, at *3 (N.D. Cal. July 3, 2019) (noting that the statute of

4    limitations is four years from the delivery of the vehicle unless a tolling or another exception

5    applies).[4]  Warranty claims under the Magnuson-Moss Warranty Act are governed by the same

6    statute of limitations.  *Rooney v. Sierra Pac. Windows*, 566 F. App'x 573, 576 (9th Cir. 2014).

7         Vanella purchased her vehicle on August 21, 2014.  Accordingly, Vanella's claims under

8    Song-Beverly and Magnuson-Moss expired four years after purchase, on August 21, 2018.  *See*

9    Compl. ¶ 9.  Because she did not initiate this action until December 4, 2019, on the face of the

10    Complaint the statute has run.

11         The statute of limitations is three years for Vanella's fraud claim.  "An action for relief on

12    the grounds of fraud or mistake must be commenced within three years."  *Kline v. Turner*, 87 Cal.

13    App. 4th 1369, 1373 (2001); Cal. Civ. Proc. Code § 338(c)(3)(A); *see also Finney v. Ford Motor*

14    *Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018) (noting that a

15    common law fraud claim was subject to three-year statute of limitations).  Vanella alleges that

16    Ford committed fraud "by allowing the Vehicle to be sold to Plaintiff without disclosing that the

17    Vehicle and its engine was defective and susceptible to sudden and premature failure."  Compl. ¶

18    53.  Accordingly, the statute ran three years after purchase on August 21, 2017.  *See Perez v.*

19    *General Motors LLC*, No. 19-cv-00038, 2019 WL 3766613, at *2 (S.D. Cal. Aug. 9, 2019)

20    (concluding that the running of the statute was "apparent on the face of the complaint" where the

21    plaintiff had alleged fraud at the time of purchase); *Yetter v. Ford Motor, Co.*, No. 19-cv-00877-

22    LHK, 2019 WL 3254249, at *4 (N.D. Cal. July 19, 2019) (noting that the fraud claim "appear[ed]

23    to have expired" three years after the vehicle's purchase).

24         According to her own pleadings, Vanella's claims are barred unless she can plausibly plead

25

26    violations of the Song-Beverly Act).

27    [4] Ford criticizes Vanella's reliance on cases addressing the doctrine of fraudulent joinder in the
context of motions to remand.  While defendants relying on fraudulent joinder to establish federal

28    jurisdiction indeed bear a heavy burden, the broader discussion in such cases is relevant insofar as
it addresses the principles at issue here.

1   that a tolling or delayed accrual doctrine applies.

2   **B.      Whether a Theory of Postponed Accrual or Tolling Applies**

3   Vanella asserts that the following doctrines toll or delay the accrual of her claims:  delayed

4   discovery, fraudulent concealment, the repair doctrine, the future performance exception, and

5   equitable tolling and equitable estoppel.[5]  Vanella's Complaint is entirely devoid of facts that

6   could support any of the tolling theories, which are listed in a single paragraph.  *See* Compl. ¶ 8.

7   My inquiry below focuses on whether Vanella's Opposition has presented enough to cure those

8   deficiencies.  *See generally* Opposition ("Oppo.") [Dkt. No. 13].

9   **1.      Delayed Discovery and Fraudulent Concealment**

10  Vanella asserts that the delayed discovery rule applies and delays the accrual of her fraud

11  claim because she could not reasonably have discovered the engine defect until shortly before she

12  initiated this case.  Oppo. 11-12; *see also* Compl. ¶ 63c.  She further argues that Ford's fraudulent

13  concealment tolled the statute of limitations.  Oppo. 8-9.  Because Vanella's reliance on these

14  doctrines fails for the same reason, I address them together.

15  "California's discovery rule delays the accrual of a cause of action until a plaintiff either

16  became aware of the injury and its cause or could have discovered the injury and cause through

17  reasonable diligence."  *Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 5117168, at *3

18  (N.D. Cal. Oct. 27, 2011) (citing *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)).

19  To rely on this rule, a plaintiff must plead:  (1) the time and manner of discovery *and* (2) the

20  inability to have made earlier discovery despite reasonable diligence."  *Fox*, 35 Cal. 4th 797, 808

21  (2005) (emphasis in original).  Repair center assurances that issues have been resolved do not

22  alone serve to show that a car owner could not have discovered a defect if there are signs of

23  continued problems.  *See, e.g.*, *Durkee v. Ford Motor Co.*, No. 14-cv-0617-PJH, 2014 WL

24  7336672, at *7 (N.D. Cal. Dec. 24, 2014) (concluding that the plaintiffs had "reason to suspect"

25  their claims existed despite assurances that Ford had repaired problems); *Galvez v. Ford Motor*

26

27  [5] Although Vanella's Complaint pleads a class action theory of tolling, she does not defend this
    theory in her Opposition other than a brief mention in her introduction.  *See* Oppo. 6.
28  Accordingly, I consider that theory abandoned and do not address it here.

1  *Co.*, No. 17-cv-02250, 2018 WL 4700001, at *5 (E.D. Cal. Sept. 30, 2018) ("The repeated

2  appearance of a check engine light in a brand-new automobile arguably alerts its owner that

3  something is amiss, even where the dealer repeatedly represents that it has resolved the issue.").

4  　　　It is not clear from Vanella's Complaint when she discovered the alleged defect(s). In

5  addition, she alleges no facts showing that she exercised diligence in attempting to understand the

6  source of the various problems she experienced with her vehicle. The closest she comes to

7  making such an argument in her Opposition is as follows: "Plaintiff alleges further that the fraud

8  was ongoing, which prevented the reasonable discovery of the misconduct any earlier." Oppo. 11

9  (citing Compl. ¶¶ 13, 25, 28, 63(c)). But in the paragraphs of the Complaint that Vanella cites, she

10  only asserts that Ford representatives have been unable to repair the vehicle. Just as she cannot

11  establish diligence by pleading representations that the vehicle had been repaired, the mere fact

12  that she made repair visit(s) does not mean she was diligent. *See Durkee*, 2014 WL 7336672, at

13  *7.

14  　　　Instead, the allegations in the Complaint suggest that Vanella had early reasons to suspect

15  the injuries she has alleged here. *See Galvez*, 2018 WL 4700001, at *5 (noting that the allegations

16  showed the plaintiff "had a factual basis to suspect her injury but did not attempt to investigate

17  it"). Of the dozens of defects listed in the complaint, she alleges several that surely would have

18  impacted her use of the car or otherwise caught her attention. For example, she raises the

19  following: "repeated illumination of [the] check engine light," "defects related to the coolant level

20  sensor to become [sic] erratic," "defects requiring replacement of the side door latch," "defects

21  causing the illumination of the coolant light," "defects causing the transmission not to accelerate,"

22  and "defects causing a whining noise from the transmission." Compl. ¶ 11. Given these open and

23  obvious issues, it is difficult to imagine plausible allegations that Vanella could not have

24  uncovered her injury earlier despite a diligent investigation. *See Finney v. Ford Motor Co.*, No.

25  17-cv-06183-JST, 2018 WL 2552266, at *4 (N.D. Cal. June 4, 2018) (noting that the allegations

26  were "particularly implausible" because the plaintiff had failed to explain why one engine light

27  revealed the defect when problems over the course of 10 years had not).

28  　　　The same is true for fraudulent concealment. Under this doctrine, "A defendant's fraud in

7

1   concealing a cause of action against him will toll the statute of limitations, and that tolling will last

2   as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris*

3   *U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007); *see Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK,

4   2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) (noting that several courts have applied

5   fraudulent concealment to Song-Beverly claims). "This doctrine requires the plaintiff (1) plead

6   with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate

7   that he or she used due diligence in an attempt to uncover the facts."[6] *Philips*, 2016 WL 1745948,

8   at *14 (internal quotation marks omitted). Because Vanella fails to allege any facts showing

9   diligence, she cannot invoke the fraudulent concealment doctrine to make her claims timely. *See*

10  *Yetter*, 2019 WL 7020348, at *8; *Finney*, 2018 WL 2552266, at *4. Further, her allegations of

11  fraud lack the required particularity.

### 2.      The Repair Doctrine

13          Although she does not cite California Civil Code section 1795.6 or any cases that apply it,

14  Vanella argues that the repair doctrine tolls the statute of limitations for her claims. Oppo. 10.

15  Under Section 1795.6(b),

>           Notwithstanding the date or conditions set for the expiration of the
>           warranty period, such warranty period shall not be deemed expired
>           if . . . (2) the warranty repairs or service performed upon the
>           nonconforming goods did not remedy the nonconformity for which
>           such repairs or service was performed and the buyer notified the
>           manufacturer or seller of this failure within 60 days after the repairs
>           or service was completed. When the warranty repairs or service has
>           been performed so as to remedy the nonconformity, the warranty
>           period shall expire in accordance with its terms, including any
>           extension to the warranty period for warranty repairs or service.

21  Cal. Civ. Code. § 1795.6(b).

22          Vanella's reliance is misplaced. "[A]s the plain language of the provision makes

23  clear, Section 1795.6 addresses extending the 'warranty period,' not tolling the statute of

24  limitations, during the time of repair." *Mangiapane v. Ford Motor Co.*, No. 19-CV-02014-HSG,

25  ────────────────

26  [6] "The second element requires the plaintiff to allege (1) when the fraud was discovered; (2) the
    circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing

27  to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry."
    *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4,

28  2018) (internal quotation marks omitted).

8

1    2019 WL 5199534, at \*3 (N.D. Cal. Oct. 16, 2019); *see also Kaighn v. Volkswagen AG*, No. 15-

2    cv-8905, 2015 WL 11112537, at \*1 (C.D. Cal. Dec. 9, 2015) ("California Civil Code § 1795.6

3    does not toll Song-Beverly Act claims like the ones brought here.  It extends warranties for the

4    period of time needed for repairs; it is not a tolling statute.").

5              In any event, "[e]ven assuming extending the duration of the implied warranty under the

6    repair doctrine would concomitantly extend the statute of limitations," the pleadings are

7    inadequate to invoke this doctrine.  *See Mangiapane*, 2019 WL 5199534, at \*4.  First, Vanella

8    does not plead that she notified Ford within 60 days that an attempted repair was unsuccessful.

9    *See Covarrubias v. Ford Motor Company*, No. 19-cv-01832-EMC, 2019 WL 2866046, at \*4

10   (N.D. Cal. July 3, 2019).  Indeed, she merely asserts that "[t]o date, Ford has never repaired the

11   Subject Vehicle"—which is far from sufficient.  *See* Oppo. 10.  Second, neither the Complaint nor

12   the Opposition sets forth the duration of the repair attempt(s), which is necessary information

13   because the doctrine operates only for the "time of repairs of service."  *See Perez v. Ford Motor

14   Co.*, No. 19-cv-06866, 2019 WL 5959561, at \*3 (C.D. Cal. Nov. 13, 2019); *see also Mangiapane*,

15   2019 WL 5199534, at \*9 (noting plaintiff could not plausibly plead that the vehicle was under

16   repair for seven years); *Covarrubias*, 2019 WL 2866046, at \*5 (noting plaintiff could not

17   plausibly plead that the vehicle was under repair for five years).

18                     **3.        The Future Performance Exception**

19             Under Section 2725's future performance exception, where the warranty "explicitly

20   extends to future performance of the goods, and discovery of the breach must await the time of

21   such performance, the cause of action accrues when the breach is or should have been

22   discovered."  Cal. Com. Code § 2725(2).  "[T]he exception is narrow and 'does not occur in the

23   usual case, even though all warranties in a sense apply to the future performance of goods.'"

24   *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) (quoting *Carrau v.

25   Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 292 (2001)).

26             Vanella raises this exception only in the context of her claim for breach of the implied

27   warranty of merchantability.  Her position is directly contrary to authority from courts in

28   California, which "have consistently held [an implied warranty] is not a warranty that explicitly

9

United States District Court
Northern District of California

1    extends to future performance of the goods." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169

2    Cal. App. 4th 116, 134 (2008) (internal quotation marks omitted) (collecting cases). "Therefore, a

3    claim for breach of implied warranty accrues, and, therefore, the statute of limitations begins to

4    run, upon tender of delivery." *Ferris v. Ford Motor Co.*, No. 18-cv-03216-JSW, 2019 WL

5    1100376, at *2 (N.D. Cal. Mar. 8, 2019).

6            This doctrine does not delay the accrual of Vanella's claim for breach of implied warranty.

7    As already noted, Vanella does not assert that the future performance exception applies to her

8    express warranty claim; given her Complaint, it does not seem that she plausibly could. Although

9    she indeed alleges a three-year express warranty, she also asserts that "[d]uring the warranty

10   period, the Vehicle contained or developed defects . . . ." Compl. ¶¶ 10-11. To plead this

11   exception, Vanella would have to provide information showing that the breach "[was] or should

12   have been discovered" no earlier than December 4, 2015—in other words, four years before she

13   initiated this action. *See Covarrubias*, 2019 WL 2866046, at *4 n.1 ("[I]f Plaintiff can show that

14   she became aware on a particular date that her Vehicle's defects could not be fixed, her express

15   warranty cause of action warranty would accrue (and the statute of limitations would run for four

16   years) from that date."). Given the 50+ defects alleged, it is difficult to imagine that none of them

17   surfaced during the first 16 months that Vanella owned the vehicle. *See Ferris*, 2019 WL

18   1100376, at *4 (noting that the plaintiff had alleged "no facts to allow the Court to conclude that

19   the claim for breach did not accrue upon delivery of the vehicle").

20           **4.**      **Equitable Estoppel and Equitable Tolling**

21           Courts may apply equitable doctrines to toll the time period for filing claims, although

22   these doctrines should be used "sparingly." *See Nat'l R.R. Passenger Co. v. Morgan*, 536 U.S.

23   101, 113 (2002). Equitable tolling applies when the defendant's wrongful conduct or

24   "extraordinary circumstances beyond [a plaintiff's] control" prevented timely claims. *Seattle*

25   *Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991). The plaintiff must plead

26   "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the

27   plaintiff to discover the operative facts that are the basis of its cause of action within the

28   limitations period, and due diligence by the plaintiff until discovery of those facts." *Fed. Election*

1   *Comm'n v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996); *see also Irwin v. Dep't of Veteran Affairs*,

2   498 U.S. 89, 96 (1990) (declining to apply equitable tolling where the plaintiff alleged "at best a

3   garden variety claim of excusable neglect").

4         Vanella's allegations are a far cry from the extraordinary circumstances that make

5   equitable tolling appropriate. Vanella has pleaded none of the required elements: not particular

6   allegations of fraudulent conduct, not when she learned of the operative facts giving rise to her

7   claims, and not her own diligent efforts to discover those facts.

8         As set forth above, Vanella's complaint fails to allege facts that could that any theory of

9   tolling could salvage her claims. Her arguments are conclusory and lack details specific to her

10  vehicle or her interactions with Ford and its representatives. Ford's motion to dismiss is

11  GRANTED on this basis.

12  **II.    SUFFICIENCY OF THE PLEADINGS**

13        Although dismissal is appropriate on statute of limitations grounds, I will briefly address

14  the sufficiency of the pleadings in case Vanella is able to cure the deficiencies set forth above.[7]

15        **A.  Section 1793.2(d)**

16        Song-Beverly obligates a manufacturer to replace nonconforming goods or reimburse a

17  buyer for them if they have not been repaired within a reasonable number of attempts. Cal. Civ.

18  Code § 1793.2(d). The plaintiff has the burden to prove:

19
20          (1) the vehicle had a nonconformity covered by the express warranty
    that substantially impaired the use, value or safety of the vehicle (the
    nonconformity element); (2) the vehicle was presented to an
21  authorized representative of the manufacturer of the vehicle for repair
    (the presentation element); and (3) the manufacturer or his
    representative did not repair the nonconformity after a reasonable
22  number of repair attempts (the failure to repair element).

23  *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001). Because "attempts" is

24  plural, "liability may be established by showing that a vehicle has been subject to repair at least

25  two times for not conforming to the warranty." *In re Ford Motor Co. DPS6 Powershift*

26  *Transmission Prod. Liab. Lit.*, No. 17-cv-06656, 2019 WL 3000646, at *2 (C.D. Cal. May 22,

27  ─────────────

28  [7] Ford does not challenge the sufficiency of Vanella's claim for breach of the implied warranty of
    merchantability.

1   2019).

2       Although Vanella raises various different defects, and generally asserts that authorized

3   repair facilities failed to fix them, her allegations regarding the presentation element are not clear.

4   *See* Compl. ¶¶ 11, 63c. *But see* Compl. ¶ 28 (alleging for the fourth cause of action that Ford's

5   representatives failed to repair the vehicle "each time" she presented it). While she need not have

6   presented any particular nonconformity more than once as Ford argues, she must clearly plead that

7   she presented a non-conforming vehicle more than once. *See* Mot. 5; *Montgomery v. Ford Motor*

8   *Co.*, No. 19-CV-07086-BLF, 2019 WL 6896146, at \*3 (N.D. Cal. Dec. 18, 2019) ("Ford has not

9   cited to any authority requiring Plaintiff to plead that she made two or more repair visits

10  for *each* alleged defect."). She should clarify this element on amendment.

11      **B. Section 1793.2(b)**

12      Under Section 1793.2(b), if "service and repair facilities are maintained in this state and

13  service or repair of the goods is necessary because they do not conform with the applicable

14  express warranties, service and repair shall be commenced within a reasonable time by the

15  manufacturer or its representative in this state." Cal. Civ. Code § 1793.2(b). Unless the buyer and

16  manufacturer agree otherwise, "the goods shall be serviced or repaired so as to conform to the

17  applicable warranties within 30 days." *Id.*; *Watson v. CarMax Auto Superstores W. Coast, Inc.*,

18  No. 2:16-cv-09006, 2017 WL 3081824, at \*2 (C.D. Cal. May 4, 2017) ("[Section 1793.2(b)]

19  provides that, absent a written agreement to the contrary, a warrantor must repair or service a

20  defective vehicle within 30 days.").

21      Vanella alleges that Ford failed to serve or repair the vehicle in conformity with the

22  warranty within 30 days. Compl. ¶¶ 20-21. There are no facts to support her contention that the

23  violation was "willful." She should clarify the facts giving rise to that assertion on amendment.

24      **C. Section 1793.2(a)(3)**

25      Vanella argues that Ford violated Section 1793.2(a)(3) of the Song-Beverly Act by failing

26  to "make available to authorized service and repair facilities service literature and replacement

27  parts sufficient to effect repair." Her Complaint alleges no facts to support this assertion, or how it

28  caused her alleged injuries. *See* Compl. ¶¶ 24-26. She merely alleges: "It is reasonable to infer,

12

1    given Ford's alleged exclusive knowledge of the defect, that the attempted repairs were not

2    successful at least in part because Ford failed to provide its authorized repair facilities with the

3    necessary literature or replacement parts pursuant to Civil Code Section 1793.2(a)(3)." Oppo. 15.

4    Without any plausible facts, this inference is unreasonable. *See In re Gilead Scis. Sec. Litig.*, 536

5    F.3d at 1055 (noting that courts are not obligated to accept "unreasonable inferences" as true).

### D.  Breach of Express Warranty

7        Vanella raises claims for breach of the express warranty under both Song-Beverly and

8    Magnuson-Moss.  "Under both [the Song-Beverly Act and the Magnuson-Moss Act], the court

9    applies state warranty law." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009); *see*

10   *also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) ("Claims under the

11   Magnuson–Moss Warranty Act stand or fall with express and implied warranty claims under state

12   law.") (internal quotation marks and formatting omitted).  "To state a claim for breach of express

13   warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2)

14   reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's

15   injury." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D.

16   Cal. 2015).

17       Vanella fails to allege the "exact terms" of the express warranty" provided by Ford or that

18   she reasonably relied on it; she should clarify these allegations on amendment.

### E.      Fraud by Omission Claim

20       "A claim for fraud based on concealment or omission requires that: (1) the defendant must

21   have concealed or suppressed a material fact; (2) the defendant must have been under a duty to

22   disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed

23   the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and

24   would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a

25   result of the concealment or suppression of the fact, the plaintiff sustained damage." *In re Ford*

26   *Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. 17-cv-06656, 2019 WL 3000646,

27   at \*5 (C.D. Cal. May 22, 2019).  Allegations of fraud must set forth "the who, what, when, where,

28   and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

13

1    2009) (internal quotation marks omitted).

2         Vanella's fraud allegations are insufficient in two respects.[8]  First, she fails to allege a duty

3    to disclose.  *See In re Ford*, 2019 WL 3000646, at \*6 (finding allegations "thin" but sufficient

4    where the plaintiffs alleged that Ford "directly market[ed] its vehicles to consumers and

5    communicates with consumers through the authorized dealerships from whom Plaintiffs did

6    purchase their vehicles").  Second, she fails to plead the circumstances of any alleged omission(s)

7    with particularity.  *In re Ford*, 2019 WL 3000646, at \*7 ("To plead the existence of an omission

8    sufficient to support a fraudulent concealment claim, a plaintiff 'must describe the content of the

9    omission and where the omitted information should or could have been revealed.") (internal

10   quotation marks omitted).  If she wishes to pursue this claim, she should add the required detail in

11   her amended complaint.

**CONCLUSION**

13        For the foregoing reasons, Ford's motion to dismiss is GRANTED.  If Vanella wishes to

14   amend, she must do so no later than March 16, 2020.  The Case Management Conference set for

15   March 10, 2020 is continued to June 9, 2020.[9]

16        **IT IS SO ORDERED.**

17   Dated: February 24, 2020



William H. Orrick
United States District Judge

---

[8] I will not apply the economic loss rule to this claim, at least at this stage.  *See In re Ford*, 2019 WL 3000646, at \*6 (declining to apply the economic loss rule to fraud by omission claims after "find[ing] insufficient support in the California cases" for doing so).

[9] The next Case Management Conference was originally announced as May 5, 2020; I am continuing it so that motion practice will be complete prior to the conference.